IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) CASE NO.: CR205-48 |
| v. | ) |
| | ) |
| | ) |
| TONY BERNETTE BLAKE | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Tony Bernette Blake ("Blake") is charged with possession of a firearm by a convicted felon/armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); possession with intent to distribute cocaine base (crack) and cocaine hydrochloride (powder), in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Blake filed two Motions to Suppress. The undersigned conducted an evidentiary hearing on May 15, 2006, at which Paul Preston ("Preston"), a sergeant with the Kingsland Police Department's Interdiction Unit, and Katherine Blake, Defendant's wife, testified. Blake filed a post-hearing Brief, and the Government responded to Blake's Motions and Brief.

### FINDINGS OF FACT

The credible testimony at the evidentiary hearing[1] established the following:

Preston has been a police officer for ten years, and for the last eight years, he has conducted primarily drug investigations. Preston testified that he began investigating Blake in 2003 after he received information about Blake's alleged criminal activities from

---

[1] Though the undersigned makes no finding as to the credibility of Katherine Blake, Defendant's wife, her testimony will not be recounted in this Report. Ms. Blake's testimony is immaterial to the issues before the Court.

AO 72A
(Rev. 8/82)

confidential informants, concerned citizens, and members of the local sheriff's department drug task force. Preston stated that a confidential informant, whom he had worked with before, told him that he was able to buy either powder cocaine or crack cocaine from Blake on several occasions over the course of the last few years. Preston wanted to verify some information he had on Blake with the informant, and the informant was able to describe Blake's house, provide several phone numbers Preston already had obtained from other investigations, and describe vehicles Blake used frequently. Preston testified that, based on information the informant provided, as well as some information the County Drug Task Force had on Blake, he arranged to buy some drugs from Blake. Preston stated that the informant told him that he had bought cocaine from Blake in the last day's time. Preston also stated that the confidential informant called Blake from a telephone in the motel room where the informant was staying and that the informant held the phone where Preston could hear the conversation. The informant told Blake that he "needed 'another one of those like he got' from him the previous night." (Doc. No. 49, p. 12.) Blake stated that he was on his way.

Preston testified that he asked the informant if Blake usually would come over right away, and the informant told him that he did. Preston stated that he went to the vicinity of Blake's house from the motel, and, once he arrived at the street Blake lives on, he saw Blake's truck leaving the driveway. Preston testified that, rather than following Blake, he drove in front of him for approximately one-half of a mile. Preston also testified that, even though he was in full uniform at the time, he met another officer who was in an unmarked police car and got into the unmarked car. Preston further testified that, once he arrived back at the hotel, he was able to get into another unmarked car at the hotel before Blake

2

arrived. Preston stated that Blake drove past the unmarked vehicle and parked in the space immediately in front of the informant's room. Preston testified that he and the other officer pulled behind Blake's truck and got out of the car. Preston stated that he walked up to the door of Blake's truck and saw two bags of what he thought was crack cocaine "in plain view right in the center console." (Doc. No. 49, p. 14.) Preston also stated that Blake was hesitant to get out of his truck, and that he (Preston) had to physically remove Blake from the truck and place him on the ground. Preston testified that he believed he had probable cause to detain Blake when he saw the cocaine[2] in plain view. Preston also testified that he searched the inside of Blake's truck based on probable cause and a lawful arrest. Preston further testified that it is department policy to inventory vehicles prior to impounding them when there has been a felony or misdemeanor drug arrest and the vehicle is going to be towed. Preston stated that it was his intention to impound and inventory Blake's truck, and Blake's truck was, in fact, impounded.

After Blake was arrested, Preston presented an affidavit for a warrant for the search of Blake's residence to Dar Hendrickson, a Camden County Magistrate Judge. The typed portion of the affidavit described the property to be searched as:

> 226 West Johnson Street, Camden County, Georgia, Kingsland. It [is] a doublewide trailer on the south side of West Johnson Street. It is a light in color trailer with white trim and dark color shutters and skirting. There [is] a small porch on the front of the trailer with the numbers 226 that are visible on the front of the trailer. There is also a large shed in the rear of the house that is used to store tools, supplies, et cetera.

(Doc. No. 49, p. 18.) The affidavit for the search warrant also included some handwritten

---

[2] Preston testified that the cocaine was field tested at the scene, and the test rendered a positive result for cocaine. (Doc. No. 49, p. 36.)

language, which was "Also to include any other structures, vehicles and boats found on the property." (Id.) This language also included Preston's initials, "PVP". Preston testified that the handwritten language was added in front of Judge Hendrickson and was added to include things which may have been found on the curtilage of the property. However, Preston testified that no contraband was found within the locations described by the handwritten language and that all of the evidence was found in the areas described in the typed language.

Blake asserts that the handwritten language on the face of the search warrant, which was not initialed by the Magistrate Judge who signed it, "materially changed the language of the warrant." (Doc. No. 31, ¶ 10.) Blake also asserts that he did not have any controlled substances in his vehicle, which the police claimed to have found during their search. (Doc. No. 32, ¶ 5.) Blake alleges that the search warrant was defective because it lacked sufficient probable cause or indicias of the reliability of Preston's informant.

## DISCUSSION AND CITATION OF AUTHORITY

I.     **The Handwritten Language Added to the Search Warrant.**

Blake asserts that there was handwritten language on the search warrant which was not initialed by the Magistrate Judge who signed it. Blake alleges that, because the Magistrate Judge did not initial this language, the language of the warrant was "materially changed." (Doc. No. 31, ¶ 10.) Blake contends that this alteration necessitates the suppression of any and all evidence the Government obtained from the second floor of the addition attached to his mobile home and the storage shed located behind his home. The Government contends that this motion should be denied, as the uncontradicted evidence

4

is that the addition to the warrant was made during Preston's presentation of the warrant to the Magistrate Judge.

The evidence before the Court indicates that the handwritten language "Also to include any other structures, vehicles, or boats on the property", which was found on the search warrant, was added in front of Camden County Magistrate Judge Dar Hendrickson. Preston testified that Judge Hendrickson read the affidavit and asked him if there were any structures that could have been included in the affidavit which was not. Preston testified that he told the judge that there was another vehicle and a boat on the property but was unsure if there were any other structure besides the shed. Preston stated that, when he informed Judge Hendrickson of this, he said "'Well, to broaden this, why don't you go ahead and annotate on there what you would also like.'" (Doc. No. 49, p. 20.) Preston also stated that the handwritten language was added before the Magistrate Judge signed the warrant. Preston's testimony, which is not contradicted by any evidence before the Court, reveals that the handwritten language on the search warrant was added in front of the issuing Magistrate Judge; in fact, the language was added at his request. Even accepting as true Blake's assertion that the handwritten language materially altered the language of the warrant, he is not entitled to the suppression of any evidence obtained as a result of the addition of this language. Preston's uncontroverted testimony at the evidentiary hearing reveals that the typed description, which Blake does not object to, covered all of the areas where the contraband was found. (Doc. No. 49, p. 19.)

II.     **Blake's Arrest and the Search of his Vehicle.**

Blake avers that he drove to a motel on the date in question with the intent to speak with someone named Eddie Young. Blake contends that police officers confronted him

5

when he arrived at the motel, removed him from his vehicle, threw him to the ground, handcuffed him, and placed him in a police car. Blake asserts that police officers searched his vehicle and claimed to have found controlled substances in his vehicle. Blake denies that controlled substances were in his vehicle and seeks the suppression of any and all controlled substances found within his vehicle.

The Government avers that the police officer lawfully approached Blake's vehicle. The Government asserts that the officer arrested Blake after he saw drugs in plain view. The Government also asserts that the search of Blake's vehicle was incident to his arrest. In the alternative, the Government contends that the search of Blake's vehicle would have occurred as an inventory search.

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Searches conducted "'without prior approval by [a] judge or magistrate[ ] are *per se* unreasonable under the Fourth Amendment[.]'" O'Rourke v. Hayes, 378 F.3d 1201, 1208 (11th Cir. 2004) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032, 29 L. Ed. 2d 564 (1971)). However, under the plain view doctrine, "if [a] police [officer is] lawfully in a position from which [he can] view an object, if its incriminating character is immediately apparent, and if the officer[ ] ha[s] a lawful right of access to the object, [he] may seize it without a warrant." Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S. Ct. 2130, 2136-37, 124 L. Ed. 2d 334 (1993). "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from

AO 72A
(Rev. 8/82)

a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment– or at least no search independent of the initial intrusion that gave the officers their vantage point." Id. at 375, 113 S. Ct. at 2137; see also O'Rourke, 378 F.3d at 1208 (noting that no search, and thus no Fourth Amendment violation, has occurred when an officer uses his eyes in a place where the officer has the right to be). When an officer observes an object left by its owner in plain view, no search occurs because the owner has exhibited "no intention to keep the object to himself." Illinois v. Cabellas, 543 U.S. 405, 416 n.6, 125 S. Ct. 834, 842, 160 L. Ed. 2d 842 (2005).

Another exception to the prohibition against warrantless searches is a search incident to an arrest. Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003). A search incident to an arrest requires no additional justification, "[s]ince it is the fact of custodial arrest which gives rise to the authority to search." United States v. Robinson, 414 U.S. 218, 235-236, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427 (1973). "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "may also examine the contents of any containers found within the passenger compartment[.]" New York v. Belton, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768 (1981).  Blake does not appear to contest his arrest, only the ensuing search of his vehicle. However, even if Blake contests his arrest, it was lawful. Preston saw two bags of suspected cocaine in plain view when he approached the door of Blake's vehicle. Based on this evidence, Preston had sufficient probable cause to arrest Blake. See Holmes, 321 F.3d at 1079 (explaining that "probable cause exists if, at the moment

7

the arrest was made, the facts and circumstances within the officer[']s knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.") Preston then searched Blake's vehicle after he was arrested. The evidence before the Court establishes that Preston and the other police officers found a bag of powder cocaine in Blake's truck during this search. (Preston's Aff., attached to Doc. No. 58.) Preston and the other officers legally were permitted to search the interior of Blake's vehicle, as Blake had been in his vehicle immediately prior to his arrest. Blake's motion to suppress any and all evidence found inside his vehicle is without merit. It is unnecessary to address the Government's assertion that Blake's vehicle could have been searched lawfully as an inventory search.

## III.  The Confidential Informant.

Blake alleges that he was arrested because of the participation in this case by a confidential informant. Blake contends that the informant's reliability should have been established before the information he provided was utilized.[3] Blake also contends that the information the officer set forth in his application as corroborating evidence was "nothing more than bolstering with information unsupported by details necessary to show the reliability of the information." (Doc. No. 55, p. 2.)

The Government asserts that even a cursory review of the affidavit shows that the police officers had probable cause to suspect that there were at Blake's residence. The

---

[3] Blake did not raise this issue prior to the evidentiary hearing, and the Government suggests that the Court should not allow Blake's "tactic of 'ambush.'" (Doc. No. 58, p. 4.) While the Court does not condone Blake's delay in raising this issue, the Court will address this contention.

8

Government also asserts that probable cause is supported by multiple lines of investigation, including: detailed information from a reliable informant; a telephone call to Blake at his home to order drugs, which the officer listened to and during which Blake agreed to provide drugs to the informant; the presence of drugs in plain view in Blake's vehicle; Blake's alleged known drug history; and additional confidential informant information detailing the actions of Blake and his wife. (Doc. No. 58, p. 6.)

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). "Probable cause is a fluid concept– turning on the assessment of probabilities in particular factual contexts" and is based on the "totality of the circumstances test." Id. (internal citations and punctuation omitted). Under this test, "the [informant's] 'veracity' and 'basis of knowledge'. . . [are] relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for by a strong showing as to the other." Id. at 1352-53 (quoting Illinois v. Gates, 462 U.S. 213, 233, 103 S. Ct. 2317, 2329, 76 L. Ed. 2d 527 (1983)). A deficiency in one of these considerations may also be compensated for through "corroborating evidence gathered by law enforcement officials," United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995), although "independent police corroboration has never been treated as a requirement in each and every case." Brundidge, 170 F.3d at 1353.

In his affidavit attached to the application for a search warrant, Preston stated that he met with a confidential and reliable source who provided him with accurate and reliable information; this information was corroborated by other reliable sources, including law

AO 72A
(Rev. 8/82)

enforcement personnel. (Aff., p. 1.) Preston stated that the source told him that he bought crack and powder cocaine from Blake over the course of the last few years. Preston also stated that he bought the cocaine at Blake's residence, usually from inside Blake's shed. Preston further stated that the source provided him with Blake's telephone number, which Preston confirmed through several other sources. Preston averred that the source told him about Blake's truck, which Preston stated he was familiar with based on previous investigations of Blake's alleged drug activities and his residence.

The evidence before the Court and the totality of the circumstances establish that the information Preston presented to Judge Hendrickson was sufficient to support a finding of probable cause for the issuance of a search warrant. It appears that the information presented to Judge Hendrickson, such as where he bought cocaine in the past, was based on the informant's personal knowledge. It also appears that much, if not all, of the information Preston's informant provided was verified through other sources, including law enforcement personnel, an informant who provided information on several other occasions, and Preston's own investigations; this speaks to the informant's veracity. This portion of Blake's motion is without merit.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Blake's Motions to Suppress (Doc. Nos. 31 and 32) be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this ___4th___ day of August, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

10